STATE OF NORTH CAROLINA v. LARRY JAMES ATKINS

No. 838SC517

(Filed 17 January 1984)

**1. Criminal Law § 122— additional instructions concerning inability to reach verdict—no prejudicial error**

   Although it would have been the better practice for the trial court to give an additional instruction requested by defendant that in the event that the jurors were unable to reach a unanimous decision, they should communicate it to the court, and the court would take appropriate action, the trial court's failure to give such instruction did not constitute prejudicial error under the circumstances of the case since the jury had been gone only 37 minutes when they returned with a question, and the charge the court gave made it clear that a juror was to discuss the matter with the other jurors and to reconcile their differences, but not to surrender his convictions purely for the sake of arriving at a unanimous verdict.

**2. Criminal Law § 122.2— inquiry into numerical division of jury—proper**

   A judicial inquiry into the numerical division of the deliberating jury after the jury had been deliberating only 37 minutes was not coercive and did not affect the jury's verdict.

**3. Criminal Law § 138— second degree sexual offense—aggravating factor that offense especially heinous, atrocious, or cruel properly submitted**

   In a prosecution for a second degree sexual offense, the aggravating factor that the offense was especially heinous, atrocious, or cruel was supported by the evidence where the record showed that the prosecutrix sustained several small fissures in the skin around her anus and one fairly large fissure at the posterior wall of the anus and that a pillow was placed over the prosecutrix's head while the offense was being committed.

**4. Criminal Law § 138— aggravating factor—prior convictions properly submitted**

   There was no merit to defendant's argument that the trial court erred in finding as an aggravating factor that defendant had prior convictions for offenses punishable by more than 60 days' imprisonment where defendant did not object to the admission of evidence of his prior convictions and did not raise the issue of indigency and lack of counsel at the sentencing hearing.

   Judge EAGLES concurring in part and dissenting in part.

APPEAL by defendant from *Llewellyn, Judge.* Judgment entered 20 October 1982 in Superior Court, WAYNE County. Heard in the Court of Appeals 8 December 1983.

Defendant was tried and convicted of felonious breaking and entering and second degree sexual offense. He was sentenced to

consecutive prison terms of eight years for breaking and entering and of sixteen years for second degree sexual offense.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Richard L. Kucharski, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Marc D. Towler, for the defendant.*

HILL, Judge.

Defendant brings forward four assignments of error relating to the trial court's instructions to a "deadlocked" jury and to the trial court's findings of factors in aggravation pursuant to the Fair Sentencing Act. We have reviewed each of these assignments and find no error.

The State's evidence tends to show that at approximately 6:20 a.m. on 22 May 1982, the prosecutrix was awakened by a man sitting on the edge of her bed. When the prosecutrix screamed, the intruder attempted to cover her mouth and told her he was going to hurt her if she did not shut up. After a two minute struggle with the prosecutrix, the man made the prosecutrix turn over on her stomach, placed a pillow over the back of her head and a sheet over her, and entered her rectum with his penis. After the man left, the prosecutrix went to her next door neighbor's and had her next door neighbor call the police.

The prosecutrix described her assailant to the first reporting police officer, Sgt. Sharp, as being approximately 5'10" tall, and 185 pounds in weight. The assailant was wearing bright red pants and a dark-colored shirt. The assailant had long, curly hair.

While taking the prosecutrix to the hospital, Sgt. Sharp observed a black man fitting the description given by the prosecutrix exiting a convenience store a short distance from the prosecutrix's apartment. Sgt. Sharp asked the prosecutrix if that man was her assailant and she said, "Yes, that's him." The man, the defendant, had on red knit pants, and a dark colored shirt. He had long curly hair and the zipper on his pants was open. The prosecutrix identified the defendant in court as her assailant.

A rectal examination performed upon the prosecutrix later that morning revealed several small fissures in the skin around

the prosecutrix's anus and one fairly large fissure in the posterior wall of the anus. A rectal smear taken from the prosecutrix and the prosecutrix's t-shirt that she was wearing at the time of the attack both tested positive for the presence of spermatozoa.

Defendant presented no evidence, except to question the prosecutrix's identification of her assailant, by showing through cross-examination, that the bedroom was not well-lighted by the morning sun, that the prosecutrix was disoriented, having just been awakened, and that the prosecutrix only observed her assailant for two minutes while struggling with him.

After retiring to deliberate at 4:05 p.m., the jury returned to the courtroom at 4:42 p.m. and asked the trial judge whether they would have to find the defendant guilty if they were unable to reach an unanimous verdict. The court told the jurors that any decision they made, whether guilty or not guilty, had to be unanimous. When the jury foreman indicated that the court's response did not answer the jury's question, the court further instructed the jury as follows:

> Now ladies and gentlemen, your foreman has informed me that so far you have been unable to reach a verdict in this case. I want to emphasize to you the fact it is your duty to do whatever you can to reach a verdict. You should reason the matter over together as reasonable men and women, and to reconcile your differences, if you can, without the surrender of any conscious conviction. No juror should surrender his honest conviction to the weight of the effect of the evidence solely because of the opinion of his fellow jurors as to the mere purpose of returning a verdict. I will let you now resume your deliberations to see if you cannot reach a verdict.

After ascertaining the numerical division of the jury, 6-6, the trial court dismissed the jurors at 4:47 p.m. to deliberate further. The jurors deliberated until 5:19 p.m., when they were excused to go home. The next morning the jurors began deliberations at 9:31 a.m. and returned with their verdict of guilty on both charges at 9:54 a.m.

[1] Defendant contends that the trial court erred in refusing to give his requested instruction that in the event that the jurors were unable to reach a unanimous decision, they should com-

municate it to the court, and the court would take appropriate action. Defendant also argues that the court should have instructed the jury that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors.

Although it would have probably been better practice for the trial court to have given the aforementioned instructions, the trial court's failure to give them does not constitute prejudicial error under the circumstances of this case. *See State v. Easterling,* 300 N.C. 594, 268 S.E. 2d 800 (1980). The jury had been gone only 37 minutes when they returned with a question. This hardly indicates that the jury was hopelessly deadlocked. The charge the court gave made it clear that a juror was to discuss the matter with the other jurors and to reconcile their differences, but not to surrender his convictions purely for the sake of arriving at an unanimous verdict. This Court recently upheld a charge identical to the one given in the present case in *State v. Sandlin,* 61 N.C. App. 421, 300 S.E. 2d 893, *disc. rev. denied,* 308 N.C. 679, 304 S.E. 2d 760, *cert. denied,* 52 U.S.L.W. 3422, 78 L.Ed. 2d 685, 104 S.Ct. 491 (1983). The charge contains no element of coercion which would require a new trial.

[2] We also reject defendant's argument that a judicial inquiry into the numerical division of a deliberating jury has a coercive effect and should be prohibited in every case. This argument was not made the subject of any assignments of error or exceptions in the record, and therefore this issue is not properly before this Court. N.C. App. R. 10(a); *State v. Kidd,* 60 N.C. App. 140, 298 S.E. 2d 406 (1982), *disc. rev. denied,* 307 N.C. 700, 301 S.E. 2d 393 (1983). Even if the issue was properly raised, this Court rejected an identical argument in *State v. Yarborough,* 64 N.C. App. 500, 307 S.E. 2d 794 (1983). In *Yarborough* we held that the appellate court must examine the trial court's inquiry in the context of the totality of the circumstances to determine whether the trial judge's inquiry was coercive or whether the jury's verdict was in any way affected by the inquiry. Considering the circumstances of this case, of a 6-6 vote after only 37 minutes of deliberation, we conclude that the trial court's inquiry was not coercive and did not affect the jury's verdict.

Defendant's remaining assignments of error relate to the trial court's findings of factors in aggravation pursuant to the Fair Sentencing Act. These assignments are overruled.

[3] Defendant first contends that the trial court erred, in sentencing defendant for second degree sexual offense, in finding as an aggravating factor that the offense was especially heinous, atrocious or cruel, on the ground that the finding was not supported by a preponderance of the evidence. We disagree.

In *State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783 (1983) our Supreme Court recently announced a test for determining whether an offense was especially heinous, atrocious, or cruel for the purposes of the Fair Sentencing Act. The Court stated that "the focus should be on whether the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense.*" (Emphasis theirs.) 309 N.C. at 414, 306 S.E. 2d at 786. The court went on to state, "we do not consider it inappropriate in any case to measure the brutality of the crime by the extent of the physical mutilation of the body of the deceased or surviving victim." 309 N.C. at 415, 306 S.E. 2d at 787.

For the purposes of sentencing under the Fair Sentencing Act, a preponderance of the evidence

does not mean number of witnesses or volume of testimony, but refers to the reasonable impression made upon the [mind] of the [sentencing judge] by the entire evidence, taking into consideration the character and demeanor of the witnesses, their interest or bias and means of knowledge, and other attending circumstances. . . .

*State v. Ahearn*, 307 N.C. 584, 596, 300 S.E. 2d 689, 697 (1983), quoting 2 Stansbury's North Carolina Evidence § 212 (Brandis Rev. 1973). Unquestionably, the prosecutrix's anus was mutilated as the record shows that the prosecutrix sustained several small fissures in the skin around her anus and one fairly large fissure at the posterior wall of the anus. The placement of the pillow over the prosecutrix's head, thereby adding to the prosecutrix's ordeal, was an activity not normally present in a sexual offense. The prosecutrix could have smothered to death. Finally, the sentencing judge was best able to judge the demeanor of the victim. We

hold that the trial court's finding was supported by the preponderance of the evidence.

**[4]** Defendant's final argument is that the trial court erred in finding as an aggravating factor that defendant had prior convictions for offenses punishable by more than 60 days imprisonment because there was no evidence or findings of fact as to defendant's indigency or representation by counsel at the time of the prior convictions. We reject this argument since defendant did not object to the admission of evidence of his prior convictions and did not raise the issue of indigency and lack of counsel at the sentencing hearing. *State v. Thompson*, 309 N.C. 421, 307 S.E. 2d 156 (1983).

In the trial and sentence of defendant, we find

No error.

Judge HEDRICK concurs.

Judge EAGLES concurs in part and dissents in part.

Judge EAGLES concurring in part and dissenting in part.

I concur with the majority that the trial was without prejudicial error but respectfully dissent from the portion of the majority opinion which holds that the trial court could properly consider as an aggravating factor its finding that "the offense was especially heinous, atrocious or cruel."

The loathsome nature of the defendant's misconduct is without dispute but in light of our Supreme Court's decisions in *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983), and *State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783 (1983), I am constrained to say that the conduct of the defendant, while repulsive, brutal, painful and injurious to the victim, was nevertheless not "especially heinous, atrocious or cruel" for purposes of the Fair Sentencing Act. The majority seems to disregard the *Blackwelder* requirement that "the focus should be on whether the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense.*" (Emphasis theirs.) --- N.C. at ---, 306 S.E. 2d at 786.

While an assault culminating in forced non-consensual anal intercourse under the facts here is undoubtedly physically painful, psychologically damaging and dehumanizing, there is no evidence in this record to show that the misconduct here was any worse than "normally present in that offense." I would vote to remand for resentencing.